Final matter this morning are three consolidated cases, number 19-1732, number 20-2254, number 20-2897, Wayne Prater v. PA Dept of Corrections, Aaron Vaughn v. Correction Officer Imhoff and Sgt. Tyke, and Isaac Vaughn Jr. v. Albion SCI. Mr. Ballinger. Thank you, Your Honor. May it please the Court. I'm the Director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce two third-year law students who will be presenting argument as amicus curiae in support of the plaintiffs in these cases. Mr. Samuel Gerstenmaier will handle the opening argument, and we would like, with the Court's leave, to reserve five minutes for Mr. Locke for rebuttal. That will be granted. Thank you, Mr. Ballinger. Mr. Gerstenmaier. May it please the Court. Your Honors, in its consolidation orders, this Court asked if the magistrate judges below had proper final order authority pursuant to the consent requirements of 28 U.S.C. Section 636C. The answer to that question is no in all three cases. To jump right in on the primary disagreement between appellants and appellees on this issue, the implied consent exception first ordained in Rule B. Withrow cannot cover either of the two bond cases. In Rule, the Supreme Court articulated a two-part test for when implied consent can satisfy 636C. First, there must be notice of the need to consent and right to refuse that's provided to litigants or counsel. I don't want to assume that you've scoured the universe for this, but maybe you have. Following Rule, how common is it for courts to find that there was implied consent? Your Honor, the frequency of that I don't know I could comment on globally. I do think I could say that for a lot of the courts that have examined Rule, it appears that many of the cases are decided on that notice prong and carefully examining whether or not notice was present. I think that the warnings of notice was central to this court's decision in Burton. I think Burton's a good example of that. So Burton was resolved the implied consent issue specifically because they found that there was no evidence on record that that notice was present. Notice to whom? Litigants or counsel. Does it make a difference? Is it sufficient if the counsel's put on notice? Your Honor, I think it can be sufficient if counsel's put on notice per the court's instruction in Rule. So in this case, counsel consented on behalf of the other parties and had access to the docket sheet where consent was recorded. Why isn't that enough? So Your Honor, I think there's a distinction here between the evidentiary effect that that form can create and what Defense Counsel is suggesting that it creates. That form is express evidence that counsel was informed of a need to consent and right to refuse for the introductory parties to the case, the initial parties. But what that form cannot do is create evidence that they were aware of the need to consent and right to refuse for all subsequent defendants that were later added to the action. So Rule implied consent is for individual parties. So we're looking for implied consent to cover the additional defendants in the cases. We're not looking for implied consent to cover the initial on record. Same office representing the individual defendants. But Your Honor, just because just because that's. First of all, you had in these collection cases, you had a lot of John Doe's, you had some John Doe's, you had some named individual defendants changed. But you had the Department of Corrections in here as a common defendant. And you had the same counsel who had, as the record shows in this case, had a series of different counsel in that office who consented. And presumably those who succeeded them were aware of the consent on the record. I don't know what more you could ask either counsel or us to look for. I know exactly what you could ask for, Your Honor. The form informed counsel of the consent that 636C consent was necessary in order for the magistrate judge to exercise final order authority. That form did not inform counsel that the need to consent and right to refuse for all parties was required for 636C authority to be issued. And prior to this court's opinion in Burton, that was theoretically an open legal question. And so it very well could be the case that at the time these cases were being litigated, informed and knowledgeable counsel at the Attorney General's office could have understood that consent was maybe not required for all of those additional defendants. And so that form cannot bridge that evidentiary gap. Second, Your Honors, I'd like to note that even if there's some differences on whether or not notice is met here, the second prong of the roll test is not met. And we think that's a critical distinction for this court to recognize. In roll, they noted there was the notice prong, but the second prong are actions that when continuing to try the case demonstrate a submission to the case dispositive authority of the magistrate judge. Which means if anything happens prior to summary judgment doesn't satisfy that test. I'd say. Because if I'm a litigant and the magistrate judge is taking all kinds of actions through that point, I have no reason to assume that the case isn't headed toward a district judge later down the line. That's correct, Your Honor. That's correct. And what was different, I guess, with roll was, I mean, they were a trial. And the judge said three times, I'm proceeding consistent with consent under 636. You're correct, Your Honor. And the key distinction there is that is how the court in roll framed the question that they were answering. So the general holding where they stay continuing to try the case must be read in light of how they defined the question. At the bottom of page 586 of the opinion, they note, nonetheless, roll and Garaby clearly implied their consent when they appeared without objection. Those are the actions after two things. After being informed of the right to refuse and after being informed that the magistrate judge, and I quote, intended to exercise case dispositive authority. So that's where the parties were told that not counsel. No, I think I think I think just count. I think that's either, Your Honor, the instruction, what would happen there? The general appearances enroll the council where the parties told that were only counsel told that statement of being of being instructed that the magistrate judge was intending to exercise case spot of authority in footnote one. They cite three separate hearings before the magistrate judge. I think for sure counsel was informed. And so their general appearances satisfied the implied consent test because they had direct confirmation that case dispositive authority was going to be exercised. And in the context of that, but finished my question, I'm not sure I'm being clear. I'm really, really interested to probe the question of whether it's enough to advise counsel or whether the party has to be told. Is this, you know, like, you know, you don't take a guilty plea from a lawyer. You know, you have to acquit the parties is is the entitlement under the Constitution to an article for a judge of sufficient import that the party has to consent to this. It's not enough to get the lawyers consent. Your Honor, I think there is a good argument to be made that the statute in its naming of parties as the ones that need to be providing voluntary informed consent are required to be knowledgeable in that decision. Now, I think there's an inference naturally that counsel is informing their parties and operates appropriately. At footnote one, didn't the court say that on three different occasions, counsel was present and stood silent when the magistrate judge stated that consent? Yes, yes. But I think I think I take Judge Hardiman's questions to be asking if it's also necessary, though, that the parties have some kind of trying to get a handle on on exactly what happened in role. And Judge Porter's clarifying it. Apparently, by negative implication, it was only counsel. It wasn't the party. And you think that's you don't you don't need to say the party needs to consent to win your case. I get that. Right. Your argument has less to do with whether the party or the lawyer is consent than it has to do with a multitude of parties all giving consent in some form. Yes. And regardless in this case, I don't think it's dispositive in this case whether the council or the parties got these notices because the action prong of role was not satisfied because the just the the connection to case dispositive authority is not inherent at the stage of litigation that these cases were proceeding. And so if we even if the court were wanting to further investigate, if the parties had to have that direct information prior to trial, the actions prong regardless is not met. I'll briefly note as well that even if the court were not concerned that magistrate judge jurisdiction wasn't satisfied below, the two Vaughn cases still need to be vacated and remanded because the magistrate judge below erred in not finding that ADM 001 was an alternate alternate and fully separate exhaustion of properly exhausted their administrative remedies. That pathway is independent of 804. 804 in some ways is subordinate to it, and it should be sufficient for remand that that evaluation of 001 was not considered for those reasons, unless there are further questions. Thank you, Your Honor. May it please the court. My name is Daniel Mullen. I'm with the Pennsylvania Office of Attorney General, and I represent the Department of Corrections in the two bond cases. My colleague, Sean Kirkpatrick, is also here. He represents the Commonwealth as amicus in the Prater case, so I'm going to be addressing the first issue that this court identified in its September 6 order, whether all defendants in the two bond cases voluntarily consented under Rowell. Mr. Kirkpatrick will address the second issue that this court identified, also address any merits issues that may arise in the two bond cases. I'd like to begin by explaining why we believe that all parties in the two bond cases voluntarily consent to the magistrate judge's jurisdiction. In Rowell, the Supreme Court confirmed that consistent with Article III, consent can be expressed or it can be implied through conduct. And under Rowell's implied consent rule, so long as the litigant or counsel is made aware of the need to consent, his voluntary appearance before the magistrate judge without objecting is enough, and I think that's exactly what we have here. Now, my friends attempt to cabin Rowell. They argue that implied consent can only be found under the precise facts of that case, but I don't think there's anything in the Supreme Court's opinion. This isn't like qualified immunity. I mean, it doesn't have to be the precise facts of the case, but it's a pretty high hurdle, isn't it? I don't think it's... Reading Rowell really, I think, tells lower courts that this is the exception, not the rule. Respectfully, Your Honor, I don't read that into Rowell. I mean, the court did note that exception in a footnote responding to the dissent, so I don't think we should put more weight on that footnote than it can bear. And the rest of that sentence is, we think this is the exception because of Rule 73. So the expectation is in the ordinary course, Rule 73 will be followed, but the question is what happens when it's not and what types of conduct can imply consent. And what this court said just last year in Burton was that there is no bright line rule for what conduct implies consent. We keep it open. We look at it on a case-by-case basis. There you had the issue of the post-judgment consent. That wasn't enough. But I think here we have conduct during the course of proceedings that is enough. So I don't think it's that high of a standard, Judge. And I guess you'd agree it's enough if counsel consents, the party doesn't have a right to consent, or there's not a requirement for the party itself to consent? No, there's no requirement. I think if this court were to adopt the standard that it has to be the party, apparently what would have to happen in cases like this where there's 35 people named is somebody from the Office of Attorney General would have to drive to the prison, hold a seminar on the distinction between an Article I judge and an Article III judge, make sure each and every individual understands that. That's not the way this would work. I mean, how hard is it to get your client to sign a consent form? I mean, and you all are the, you're the frequent flyers. You're the ones with the most at stake here. And I mean, the language of the statute says, notwithstanding any provision of law of the country, upon the consent of the parties, it doesn't say upon the consent of the parties or their duly authorized representatives or upon the consent of the parties or their counsel. Correct. Correct, Your Honor. The statute does envision that. And what Growell addresses is what happens when we find ourselves in a situation post-judgment. What about Justice Scalia's concurrence in Gonzales? It's been a while since I looked at that concurrence, Your Honor. But I do think Gonzales helps answer the question, which is, the majority opinion there is discussing, you know, there are instances where you need in-person waiver by the individual, and there are other instances where it can be a litigation decision by counsel. And the majority opinion in that case talks about some of the practical necessities for the adversarial process to let counsel make certain types of decisions, and we think this is one of those cases. Well, let's focus on what happened in Gonzales. You argue, I think, correct me if I'm wrong, that the Supreme Court has held that consenting to magistrate-judge jurisdiction is a strategic decision that belongs exclusively to counsel. You said that at page 29 of your brief, correct? Correct. All right. But in Gonzales, the Court held that, quote, acceptance of a magistrate judge at the jury selection phase is a tactical decision, end quote. Yes. I don't know how that helps you, because it's not unusual, I think it's unusual here in this district, but it's not unusual, as I understand it, in several other districts, for the district judge to delegate the task of jury selection to the magistrate judge. The magistrate judge picks the jury, and then the district judge takes the bench. Right. So I don't know how that helps you. Judge Hardman, I acknowledge that distinction in terms of, you know, the specific facts of Gonzales and the specific issue it was looking at, but the majority opinion also, again, included an extensive discussion about, look, there are instances where you need it to be in person. If somebody's going to be accepting a guilty plea, we have to make sure that person, as an individual, knows and understands. And then there are other instances where we consider the practical necessities, and I think the practical necessities in this case. All right. I appreciate your candor, because that's what's really troubling me, is that it sounds like the Commonwealth is focused on the practical necessities, which is you're getting these cases all the time, like these, they sometimes involve dozens of defendants, sometimes unnamed John Does. And your argument is, look, the practical thing here is to, when one lawyer walks in and says, I'm representing these 32 correctional officers, and I say that my client's consent to a magistrate judge, that's good enough. I appreciate that as a practical matter, but I'm having trouble squaring that with the text of the I understand that, Your Honor, but Rowell addressed this, right? So it said, yes, we want to make sure that consent is knowing and voluntary and not being coerced, but on the other But so much had happened in Rowell. I guess I'm putting all my cards on the table here. I'm more comfortable with it, with what happened in Rowell. I think it was 5-4, right? But I'm more comfortable with that because there was a tremendous amount of water under the bridge. And what courts don't want to be in the business of is having litigants sandbag the justice system by proceeding all the way down to the very end of a litigation, and then have an instinct that things aren't going so well. And then you throw the flag and say, oh, I want a district judge. We're dealing with here, the opposite end of the spectrum. We're dealing with the beginnings of these cases and the form that the Western District of Pennsylvania uses. So why shouldn't we expect the district court in this district to cross the T's and dot the I's at the outset of the case? Your Honor, I think in most cases that happens, I think it's a minority of cases that have this potential problem. And I recognize what I'm about to say is anecdotal, but I personally have 23 active cases before this court. I think 20 of them are inmate cases that arise from the Western District. In addition to these two, there's only one other that has a problem with implied consent. So that's three out of 20. Well, and that's very helpful. Then tell us what distinguishes the three. What caused the problem? Is there something, I mean, we've got a jurisdictional issue here we to prevent the kinds of difficulties that have ensued with the three cases that you've referenced? Your Honor, I think an important point of clarification about those three cases, all three of them predate Burton. So I would respect... You think Burton solved the problem? I don't think Burton solves the problem, but I think Burton... Then tell us what we need to do to solve the problem. Or tell us we don't have a problem. I don't think we have a problem because I think, again, we're talking about three cases where we have to look to implied consent and you look to... We don't have to look to implied consent. There might not be consent. We don't know. Maybe we're defining problem differently. I'm defining these as problems because the issue of whether a litigant is willing to forgo his or her or its right under the final judgment in front of a magistrate judge, that shouldn't be a complicated task. I agree, Your Honor. Anytime it's not clear, I'm calling that a problem. I think it is clear here and I think it's clear from the conduct of continuing to participate in the litigation. So it's the same... What facts do we have here that show that all of the parties, through their counsel, impliedly consented to the exercise of case law? Well, Your Honor, so in both cases, the same exact lawyers, not just the same law office, as my friend suggests, the same exact lawyers who originally filed the consent forms took the first actions once the new complaint was filed or once the additional parties were brought in. In one of the cases, it was waiving service, etc. In another one, it was filing a motion for a more definite statement. So we have the exact same lawyer who has been put on notice by the form of the requirement to consent and endowed with that knowledge, voluntarily participates in the proceeding before a magistrate judge, giving themselves over to the magistrate judge's jurisdiction, being an active participant in the litigation, and asking the magistrate judge to enter judgment in the case, enter summary judgment. So I think that's enough under Rowell. If there are no other questions about the magistrate judge issue, I'll briefly address exhaustion if that's okay with the panel. I wanted to talk about this distinction between 001 and 804. But before I do, I think it's important that we consider those two policies in the context of the language of the PLRA. And the PLRA discusses exhaustion of administrative remedies. And the problem with saying that 001 is an administrative remedy is that there's nothing that the inmate can get through that policy. The most they can get out of it is an investigation. And the exclusive policy for the Department of Corrections for bringing a claim where you could actually get a remedy, get money, get something else you may want from the prison that you might want to eventually bring in a district court, 804 provides the exclusive policy for that. So I don't think that 804 is subservient to 001. I think they work in tandem. And again, 001 is simply about conducting an investigation so that the prison can know whether or not it has a... Your suit may address different things. Absolutely, Your Honor. If you want to bring a claim of damages in a federal district court, 804 is the exclusive policy for you to exhaust that remedy. You can't get that remedy in 001. The only thing that happens through a 001 is an investigation. And then the prison decides what they need to do with the officer at the conclusion of that investigation. And so based on that, neither of these inmates properly exhausted under the DOC's policy under 804, which is the exclusive policy to bring the type of claim that they brought in this case. If we disagree with you on the consent issue, what's the practical upshot? How does this case change? These two cases change. If you disagree with us on the consent issue, then I guess we have to go back and start over. And how much has happened so far? Is this like Roelle in the sense that there's a tremendous amount of water under the bridge or no? I mean, yeah, there hasn't been a trial the way there was in Roelle, but certainly there's been summary judgment. There's been deposition. There's been significant effort on the part of my clients to get this case dismissed at summary judgment. So there's water under the bridge. It might not be as much water as Roelle, but yes, it would require us to... But if it went back to an Article III judge, then, I mean, yes, presumably, Your Honor. All right. Thank you very much. Very helpful, Mr. Mullen. Let's hear from Mr. Kirkpatrick. Good morning, Your Honor. Thank you. Thank you for your cooperation. May it please the court. My name is Sean Kirkpatrick with the Office of Attorney General, and I am representing the Prater case by special invitation of this court. And before I begin talking about jurisdiction, I just want to say, although the Commonwealth is not a party in the Prater matter, it is often a party. And if this court... I hope this court doesn't adopt a parties may only consent rule, because I don't want to have to get all the members of the General Assembly to consent every time the Commonwealth is improperly named as a party. But with regard to the Prater case, of my friends and I... Sorry to jump in there, but that's fascinating. I hadn't thought of that. But even assuming that's an incredibly compelling policy argument, how do we square that with what 636 says about the parties consent? I think, Your Honor, what you should do is listen to the high court in Roelle, and which that court has recognized that there are many times when an attorney can waive an acclaim on behalf of their party. Goodness knows, if I make a representation to this court and concede an issue, sort of almost ad hoc, it binds my party. Those are strategic decisions, though. But they can have very important consequences. Absolutely. I mean, there's a Supreme Court case, the name of it's escaping me now, but it was about 15 years ago. The Supreme Court said that it was okay for a lawyer to stand up in a capital murder trial and open to the jury by telling the jury that the client was guilty. And the client did not consent to that. And I Supreme Court's rationale was that this is a strategic decision. There was overwhelming evidence. And the lawyer made a tactical strategic decision to try to prepare the groundwork for the penalty phase of the case, torpedoing his own liability phase of the case. So I understand that the Supreme Court has said that these strategic decisions are to be protected. But how does this choice to go to final judgment in front of a non-Article III judge, how do we fit that within the strategic choices jurisprudence? Isn't it a structural issue rather than a how am I going to try this case issue? I don't believe, Your Honor. It's before whom am I going to try this case? Who has authority to and do not attorneys file complaints in state court versus federal court. And I don't believe, and I've been a public attorney for 15 years. So again, consulting with my clients, the collective will of 13 million individuals can be difficult, but I don't believe that that the client simply because they don't have the knowledge, the strategic knowledge, whether these claims are best to be put in state court or federal court. And I see it as that. And we as attorneys. That sounds a lot like a guilty plea. Yes, most criminal defendants don't know whether they should plead guilty or go to trial, but they consult with their lawyer. So the court asking me whether I want a magistrate judge or an Article III judge, what do I do? And then the lawyer can talk to the client. I guess the problem you have is how do you talk to the entire General Assembly and how do you talk to thousands of departments of corrections work? Well, even if we put the practical issues aside, and I think that that's concerning, obviously, as someone who practices, but I get it. This court is looking at the text of the statute and 636. What I would say is that the courts and the law routinely treat criminal cases different than civil cases. And yes, when your one's life and liberty is at jeopardy, certain requirements such as colloquies are necessary. Here we have whether we are pursuing a civil matter on behalf of a large number of. I see my time has expired. May I continue? Thank you. A large number of entities, many of them theoretical or political entities. As counsel, I can bind my client. I do so in a variety of ways. Attorneys have tremendous power, which is why we have tremendous amount of rules and, frankly, disbarment hanging over our heads so that if we malpractice, we make terrible mistakes that one of the reasons I asked your co-counsel about this for me is the exact words was all in full rights, except, of course, the right to counsel. I'm going to be willing to buy counsel. He was a wise jurist. So, yes, and it's. We can waive and and bind our clients in many different ways. So I am over my time. Would you like to hear about jurisdiction? OK, my friends and I both only do we invite you to come make you work overtime. Please continue. I get paid the same, your honor. Um, my friends and I agree that this court has supervisory appellate authority to vacate and remand where we disagree is whether this court has statutory jurisdiction under sixty three six six thirty sixty three. And this court in Dewey and in in Bruin has already said that this court does not. And if I can quote Dewey, where the requirements of Section six thirty sixty one are not satisfied, we lack jurisdiction under Section six thirty sixty three and the parties must appeal directly to the district court that referred the case pursuant to the procedures outlined in twenty eight U.S.C. six thirty six B1. Now, my friends suggest this is dicta. It is not. It was actually necessary for the holding because the question was whether the objectors actually waived this issue. And if it's jurisdictional, you can't waive the issue. So that's why this court and Dewey said, quote, if the magistrate judge like jurisdiction over the case under Section six thirty sixty one, this court would lack jurisdiction pursuant to six thirty sixty three because this issue concerns jurisdiction over the appeal. We will address it even though the objectors did not first raise the issue in the written objections in the district court. Burton. Restated that again. But then ultimately vacated and remanded. And so what I will point out there is what Burton says, and that is we are statutorily deprived of appellate jurisdiction over the magistrate judge's order. And I believe this court would use that term intentionally. The question is not do you have authority to vacate and remand, if appropriate, if justice requires you do. The question is, do you have statutory jurisdiction? And sort of. If you go to the text of six thirty six, it's the consent of the parties that allow a magistrate judge designated to exercise civil jurisdiction under paragraph one to direct the entry of judgment. And it's upon entry of judgment in a case referred under paragraph one that the agreed party may directly appeal to this court. And if you do not have jurisdiction, you can't enter judgment. That's what six thirty sixty one says. It's void of initio. And so. Sort of a final point on that. To go back to sort of Justice Scalia and that's the dissent in Roel, which my friends rely upon. And we'll note that obviously, justices Thomas, Scalia, Stevens and Kennedy did not win the merits of that. But had they, it's interesting what they would have done. And they would have, quote, they would have remanded the case to the Court of Appeals with, quote, instructions to jurisdiction because the dissent recognized that had they prevailed, quote, valid consent is a jurisdictional prerequisite for appellate jurisdiction. So this court does not have appellate jurisdiction under six thirty six C3, which is why in Tucker Union, this a panel of this court in an unpublished decision decided that they were going to simply dismiss the appeal. And there's not a jurisdictional black hole because once we dismiss it, everybody knows there's more work to be done. Absolutely, Your Honor. And even in the rare circumstance, and that's what happened in Tucker and even in the extraordinary circumstance where the Article three judge in the district court, for whatever reason. Sits on the matter for an exceptional period of time or refuses to take any action. This court has mandamus powers, so we do not see a black hole at all. What about the Ninth Circuit's transfer move? What are your thoughts on that? I think it's the only court that did that. Yeah, I guess I would be nervous about that. I think that that this court may have, again, supervisory appellate authority can be broad, but um. If this court doesn't have jurisdiction, it should do absent that authority, it should do what it does in any other case where. And that is to simply either quash the appeal or dismiss the appeal for lack of jurisdiction. I think that is the much safer avenue. And just to put a final point on the appellate supervisory authority, it is discretionary because it's the exception to the rule. It is where justice requires, and so I suppose a question for me would be why in Porter or I'm sorry, Prater or is the Commonwealth suggesting as amici as amicus that the court should do that in this case. And I would suggest that this appeal was filed in 2019. There's been a lot of water under the bridge and to dismiss a case that is brought up right away or to dismiss an appeal that is brought up right away, I think serves justice a lot more than if a case has been sitting for a little while. Thank you. Thank you, Miss, very much. Thank you, Your Honor. We'll hear from Mr. Locke. Thank you, Your Honor. May it please the court. I'd like to first start with the role implied consent discussion, then I'll have a few points on exhaustion and the vacater issue. First on role, my friends on the other side and you, Judge Hardiman, had concerns about the practical implications and a threat of gamesmanship that might occur if litigants can throw up their hands and say, I never consented to magistrate judge jurisdiction. It is certainly true that the court in role, however, those concerns are at a minimum here. Judge Hardiman, as you pointed out, the case can proceed under 636B authority and they can always turn all of the work that has already been done and the water under the bridge into a report and recommendation. There simply aren't the practical concerns here. As the panel acknowledged, in a case that proceeds to trial, the entirety of the trial proceedings would need to be set aside in those instances. That's simply not the case here. While we appreciate the Commonwealth's practical considerations of having to obtain consent from all parties, again, a proper form and communication with clients to determine whether they in fact did consent to magistrate judge jurisdiction should be able to resolve these issues. I asked Mr. Mullen to tell us about the facts showing that all of the parties through their counsel impliedly consented to case dispositive authority and he summarized some facts ending with the summary judgment motion. Why isn't that enough? So, Judge Porter, in these proceedings, it would be unclear if all parties have not consented, whether this case was proceeding pursuant to 636B or whether it was pursuing continuing pursuant to 636C. At the addition of the subsequently added defendants, it changed the nature of this case. And at that point, by litigating the case and filing motions for summary judgment and the like, it's very well possible that the case was proceeding under 636B as a report and recommendation. And so I'd push back on my friends on the other side and say just by merely litigating the case does not indicate that they were aware that the case would be resolved by a magistrate judge under 636C. There has been some discussion about whether it is... If they're not aware, if the prison guards are not aware, does counsel still have the right to consent and waive their right to an article of prejudice? Your Honor, I think that the best reading of the statute is that it is a part, it is a right that's litigants or counsel may, as long as they are aware and submit to the case dispositive authority, then that is enough. It is, I think that that is what the Supreme Court said, but I understand the concern that this may be in slight tension with the text of the statute. Harkening back to Judge Hardiman's question on this earlier about whether the parties actually were aware in roll whether the case would be resolved by a magistrate judge, there were repeated instructions to counsel that they needed to obtain consent of all of the parties. One of those interactions occurred in open court during voir dire. It is not apparent and we have been unable to determine whether the parties themselves were actually present for that, but it was made during open courts and that instruction was explicit to at least the attorneys that were present. That's correct, Your Honor. Pretty unusual not to have the parties that were due. I agree, Judge Hardiman. I'd move, I'd like to move quickly to the exhaustion issue. My friends on the other side are incorrect about the exhaustion issue for two principal reasons. The first is that their line of reasoning seems to be precluded by this court's decision in Downey. In that case, there was an alternative provision that the inmate was able to use to exhaust his administrative remedies and on appeal, the alternative route for him to seek relief inside the prison. They argued that he needed to plead his grievance regardless of that fact, but this court rejected that argument. As long as there is an alternative route for a litigant to be able to obtain the necessary relief that they seek and they follow those procedures, then they've exhausted administrative remedies. I think that they also mischaracterize what process is given under ADM 001. ADM 001 enables the department to take whatever administrative action is necessary in order to resolve the alleged abuse. It also indicates that, and the record here shows, that upon the conclusion of a 001 investigation, the grievance procedure would defer to the results of that investigation. For example, Mr. Ehrenbahn filed a grievance but also reported abuse, and at the conclusion of his investigation, his grievance was merely denied, saying that there had been an adequate investigation under 001. I see that my time has expired, but I'd be happy to answer any of the questions on exhaustion or jurisdiction to vacate. Yeah, what's your view about jurisdiction? So dismiss, supervisory power, transfer, there are all kinds of options. None of them is particularly obvious. Sure, your honor. So Judge Hardiman, we agree with our friends on the other side that the proper remedy here is to vacate. I do think that this power, so section 636 provides that these types of appeals should proceed in the same manner as any other appeal from a district court. If you were to have a district court opinion that was rendered without jurisdiction, you would vacate that decision. I disagree with my friends on the other side. Does it matter whether we dismiss it or vacate it as a practical matter? I think that the only practical difference, Judge Hardiman, is that it would be discretionary under the supervisory appellate authority, or excuse me, under the supervisory authority, and the court would always vacate if this was statutory jurisdiction. I think as amicus, we would encourage the courts to provide instructions if you were to use your supervisory authority as to when that will be invoked and why and what action should be taken on remand. The question was a little different. I meant, is there any practical effect as to what happens next? As between vacating or dismissing? I don't believe so, your honor. If the judgment below is vacated, then the case would proceed under 636B as a reporting recommendation, and it could be disposed of that way. I think to push back a little bit on... Is there any timeliness issue, since so much time has elapsed and there has been no objection? Your honor, I think that any of the timeliness concerns would have been... The proceedings below would have been stayed or told, and so a litigant would... If this judgment was entered, I think that the district court, it would be within their discretion to still hear the case and dispose of it as is appropriate during dependency of this appeal. Yes. All right. Thank you very much, Mr. Locke. Thank you, Mr. Gerstmeier. Court is very grateful to you, Mr. Ballinger, and to the clinic for undertaking this important case. We're equally grateful to Mr. Kirkpatrick for accepting the invitation. And thank you, Mr. Mullen. The briefing was excellent. The argument was excellent. And I also want to commend counsel for their candor to the tribunal. I think that's something that sometimes feels like in the heat of advocacy, candor to the tribunal sometimes takes a backseat or is non-existent. And I think I can speak for the panel in saying that all four of you have modeled perfectly the finest traditions of the profession in terms of candor to the disposition. I just want to ask a question to the UVA team. Are both of you 3Ls? Yes, sir. Yes, sir. If this case had not come up at this time of year, but if it, say, would have come up in August or September, what would have happened with the purpose of finishing? I believe I would have asked students from next year's clinic to... We've had that kind of rotational problem with schools. But we're happy to find students for you anytime. Wonderful. All right. Well, we'll take these challenging matters, all three of them under advisement, and I'll ask Mr. Williams to adjourn the proceeding.